IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Sherrie J. Terry,                       )     Civil Action No. 8:11-cv-01473-MGL-JDA
                         Plaintiff,     )
                                        )     **REPORT AND RECOMMENDATION**
                                        )     **OF MAGISTRATE JUDGE**
              vs.                       )
                                        )
Michael J. Astrue,                      )
Commissioner of Social Security,        )
                                        )
                         Defendant.     )

        This matter is before the Court for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this

action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the

Commissioner of Social Security ("the Commissioner") denying Plaintiff's claim for disability

insurance benefits ("DIB").  For the reasons set forth below, it is recommended that the

decision of the Commissioner be reversed and remanded for administrative action

consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

        In May 2007, Plaintiff protectively filed an application for DIB, alleging an onset of

disability date of March 26, 2004.[2]  [R.104, 141–43.]  The claim was denied initially and on

reconsideration by the Social Security Administration ("the Administration").  [R. 104–09,

114–16.]  On August 4, 2007, Plaintiff requested a hearing before an administrative law

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Plaintiff also applied for supplemental security income but was deemed ineligible due to her income.  [R. 76–79.]

judge ("ALJ") [R. 118], and on September 11, 2009, ALJ Walter C. Herin, Jr., conducted a de novo hearing on Plaintiff's claims [R. 19–63].

The ALJ issued a decision on September 30, 2009 finding Plaintiff not disabled. [R. 12–18.] At Step 1,[3] the ALJ found Plaintiff last met the insured status requirements of the Social Security Act ("the Act") on June 30, 2004 and had not engaged in gainful activity during the period from her alleged onset date of March 26, 2004 through her last date insured. [R. 14, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had severe impairments of multiple chronic ventral and incisional hernias and was status post multiple surgical repairs. [R. 14, Finding 3.] The ALJ also determined Plaintiff's complaints of depression, anxiety, arthritis, and other impairments were neither relevant to the period of adjudication in the case nor related to any impairment that Plaintiff had prior to her date last insured. [Id.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 15, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ made the following findings as to Plaintiff's residual functional capacity ("RFC"):

> [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can perform no more than occasional stooping, twisting, kneeling, balancing and climbing of stairs or ramps; no crawling, crouching or climbing of ladders, ropes or scaffolds; and must avoid hazards such as unprotected heights, vibration and dangerous machinery.

---

[3] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

[R. 15, Finding 5.]  Based on this RFC, the ALJ concluded at Step 4 that Plaintiff could not perform her past relevant work.  [R. 16, Finding 6.]  At Step 5, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy Plaintiff could perform.  [R. 16, Finding 10.]  Accordingly, the ALJ found Plaintiff has not been under a disability as defined by the Act from March 26, 2004, the alleged onset date, through June 30, 2004, the date last insured.[4]  [R. 17, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision [R. 8] but the Council declined [R. 1–6], making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  *See* 20 C.F.R. § 404.981.  Plaintiff filed this action for judicial review on June 16, 2011.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and should be remanded because the ALJ

1.  erred in assessing Plaintiff's residual functional capacity by providing no analysis, in violation of the affirmative discussion requirements of SSR 96-8p and Fourth Circuit case law; and

2.  erred in evaluating Plaintiff's pain and other symptoms in accordance with SSR 96-7 and Fourth Circuit case law.

---

[4] Plaintiff filed a prior application for disability benefits on September 4, 2001 alleging disability commencing January 27, 2000.  [Case No. 2:07-cv-01322-RSC, Doc. 1.]  On March 25, 2004, the ALJ found Plaintiff not disabled, and thereafter, on May 19, 2004, the Appeals Council affirmed the decision of the ALJ, although Plaintiff claims she was not notified until May 1, 2007.  [*Id.* at 2.]  Plaintiff filed an action for judicial review in this Court on May 9, 2007.  [*Id.*]  The Commissioner moved to dismiss for lack of subject matter jurisdiction pursuant to § 205(g) because the action was not commenced within 60 days of receipt of the denial of review.  [Case No. 2:07-cv-01322-RSC, Doc. 14-1 at 2.]  The Court ultimately dismissed the action as untimely on January 9, 2008.  [Case No. 2:07-cv-01322-RSC, Doc. 21.]  Plaintiff filed the instant application for disability on May 8, 2007; however, due to the failed appeal, she must show disability occurring between March 26, 2004 and the date last insured, June 30, 2004.

[Docs. 28, 31.]

The Commissioner, on the other hand, contends the decision is supported by substantial evidence and that the ALJ

1. adequately explained his RFC findings and was only required to "'articulate some minimal analysis of the evidence to enable the reviewing court to track the ALJ's reasoning and be assured that the ALJ considered the most important evidence'"; and

2. properly discounted Plaintiff's subjective complaints of pain.

[Doc. 29 at 6–12 (quoting *Lilly v. Astrue*, No. 5:07CV77, 2008 WL 4371499, at *3 (N.D.W. Va. Sept. 22, 2008)).]

## **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

4

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and

when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court

6

enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5] With remand under sentence

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents

8

the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical

9

and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.     *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the

claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.  *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).   To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").   Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).   When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50

---

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

11

("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition

13

for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the

14

pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v.*

*Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the

following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485;

*see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.     Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Brief Medical History**

Plaintiff has a history of abdominal hernia repairs and by September 2001, Plaintiff had undergone several surgeries to correct her recurrent abdominal hernias. [R. 214–16.] In March 2004, Plaintiff presented to the Free Medical Clinic for a litany of problems, including diabetes ("Type II DM"), hyperthyroidism, hyperlipidemia, and a history of abdominal hernia repair.  [R. 295.]  In April 2004, Plaintiff underwent surgery for debridement of a large abscess on her right breast, which developed following a biopsy a few months earlier.  [R. 219.]  In August 2004, shortly after Plaintiff's date last insured, Plaintiff underwent surgery to repair a ventral hernia.  [R. 224.]  In July 2005, Plaintiff was

17

involved in an accident when "a van ran though the wall of a building, knocking several tables over, and injur[ing Plaintiff]." [R. 255.] Finally, in August 2005, Plaintiff underwent another surgery to repair a recurrent incisional hernia. [R. 227–28.] Because Plaintiff last met the insured status requirements of the Act on June 30, 2004 and a previous adjudication determined she was not disabled as of March 25, 2004, she has the burden of proving that she was disabled, as defined by the Act, between March 26, 2004 and June 30, 2004. [*See* R. 14, 17.]

**The ALJ's Credibility Determination**

Plaintiff argues the ALJ's decision contains no analysis regarding Plaintiff's pain, other than a rehash of the medical records. [Doc. 28 at 12.] Plaintiff contends the ALJ's rejection of credibility must be detailed. [*Id.* at 13.] Plaintiff complains the ALJ improperly rejected Plaintiff's claim of disabling pain solely on medical evidence and not on any evaluation of Plaintiff's pain. [*Id.* at 15.]

The Commissioner contends the ALJ articulated specific reasons, supported by substantial evidence, for finding Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms to be not credible. [Doc. 29 at 10.] Further, the Commissioner contends the ALJ did not rely on objective medical evidence in discounting Plaintiff's subjective complaints but, instead, relied on Plaintiff's lack of treatment and the fact that no doctor opined that she was disabled. [*Id.* at 12.]

Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements

18

based on a consideration of the entire case record.  SSR 96-7p, 61 Fed. Reg. at 34,485.

The credibility determination "must contain specific reasons for the finding on credibility,

supported by the evidence in the case record, and must be sufficiently specific to make

clear to the individual and to any subsequent reviewers the weight the adjudicator gave to

the individual's statements and the reasons for that weight."  *Id.*; *see also Hammond*, 765

F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the

evidence informing the ALJ's conclusions").

In this case, the ALJ noted he considered Plaintiff's testimony regarding multiple

hernia surgeries; constant abdominal and back pain; an inability to cook, sweep, mop, or

be around strong smells; and an inability to lift more than 5 pounds, walk more than 30

minutes, sit more than 45 minutes, or stand for long periods of time.  [R. 15.]  Ultimately,

the ALJ found Plaintiff's medically determinable impairments "could reasonably be

expected to cause the alleged symptoms; however, the claimant's statements concerning

the intensity, persistence and limiting effects of these symptoms are not credible to the

extent they are inconsistent with the above residual functional capacity assessment."  [*Id*.]

The ALJ reasoned,

> There is minimal treatment or documented findings between
> the previous decision and date last insured.  Medical records
> show that the claimant required two surgeries (August 2004
> and August 2005) from recurrent abdominal hernia. (Exhibits
> 7F and 8F)  In July 2005, following an accident, the claimant
> was seen at Palmetto Health for abdominal pain. (Exhibit 12F)
> Diagnostic testing showed ventral hernia and the claimant was
> instructed to perform no heavy lifting, pulling, pushing or
> straining.  Although not a medical opinion, these restrictions
> are consistent with the above residual functional capacity.
>
> As for the opinion evidence, the state agency found the
> claimant's impairments to be not severe. (Exhibits 2F and 3F)

19

>These opinions are given little weight.[8] Subsequent evidence of hernia repairs and related symptoms show that these opinions are not well supported.  There is no other opinion evidence from the relevant time period.

[R. 16.]

Consistent with the ALJ's RFC determination, the ALJ posed the following hypothetical to the vocational expert:

>Q    . . . [I]f you'll assume please the presence of an individual approximately 46 to 47 years of age having the same education and experience as the Claimant in this case who is seeking employment with the following limitations. No lifting or carrying over ten pounds occasionally, less than ten pounds frequently. No pushing or pulling over ten pounds. No standing or walking over two hours in an eight hour workday. No more than occasional stooping, twisting, kneeling, climbing of stairs or ramps. No crawling. No crouching. No climbing of ladders, ropes of scaffolds. I'm going to go ahead and go with no more than occasional balancing. In an environment that does not require exposure to hazards such as unprotected heights, vibration or dangerous machinery. Could you, would those restrictions allow, I don't think those would allow the performance of any of the past work that you just described?

>A    No, sir, because those are sedentary -

>Q    Sedentary.

>A     -- parameters.

---

[8]The Court notes that the opinion evidence cited by the ALJ actually offer no opinion as to the severity of Plaintiff's impairments.  For instance, the disability examiner's notes in Exhibit 2F indicate that a copy of the ALJ's decision of March 25, 2004 was received but that there was insufficient evidence in which to make a decision regarding this case because Plaintiff failed to provide medical source information prior to her date last insured. [R. 209.]  The examiner in Exhibit 3F made no statement as to Plaintiff's impairment other than coding both mental and physical impairment as "IE" without any further explanation. [R. 211.]  While the ALJ misstated the examiner's conclusions in Exhibits 2F and 3F by stating these examiners determined Plaintiff's impairments were not severe, the Court finds this error harmless because the ALJ gave these statements little weight.  *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994).

[R. 55.]  The ALJ clarified for the vocational expert that there was no specific limitation on sitting in this hypothetical.  [R. 56.]  The vocational expert found these restrictions to be sedentary restrictions.  [*Id.*]  The ALJ then changed the lifting limitation to no more than five pounds, consistent with Plaintiff's testimony regarding her lifting limitation.  [R. 57.]  The vocational expert opined that this restriction would put Plaintiff at less than sedentary levels.  [*Id.*]  On cross-examination, counsel for Plaintiff asked the vocational expert about the effects of Plaintiff's inability to concentrate for an hour out of every day, and the vocational expert opined that, with that limitation, Plaintiff would be unable to do any of the jobs the vocational expert had identified.  [R. 58–61.]

Upon review, the Court finds the ALJ failed to explain his basis for rejecting Plaintiff's credibility with respect to her limitations on lifting and her allegations of constant pain.  According the testimony of the vocational expert, including either of these limitations directed a finding of disability [*id.*]; therefore, the ALJ's credibility finding was crucial to his ultimate determination that Plaintiff was capable of performing sedentary work and, therefore, not disabled.  As stated, the ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" [R. 15], but he failed to explain why he ultimately rejected Plaintiff's testimony regarding her symptoms.  The ALJ merely noted there was minimal treatment and few documented findings during the relevant time period and that instructions Plaintiff received at the hospital following an accident, over a year after her date last insured, supported the ALJ's RFC assessment.  [R. 16.]  These observations fail to explain why the ALJ determined Plaintiff could lift no more than ten pounds rather than no more than five pounds as Plaintiff testified or why the

21

ALJ apparently concluded Plaintiff's alleged pain would not interfere with her ability to concentrate.

In evaluating the intensity and persistence of the claimant's pain, the ALJ may consider other evidence, including the claimant's daily activities.    20 C.F.R. § 416.929(c)(3).  Moreover, to "determin[e] the extent to which . . . symptoms, such as pain, affect [the Plaintiff's] capacity to perform basic work activities," the ALJ is to "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence," which includes medical and other evidence.  *Id.* § 416.929(c)(4).[9]  Analysis of this kind, or any other type of analysis, is missing from the ALJ's decision in this case.  The ALJ explained the correct legal standard for evaluating subjective complaints of pain in great detail and he recognized the two-step process.  [R. 15.]  The ALJ, therefore, clearly understood the correct legal lens through which to view Plaintiff's subjective complaints of pain; however, he failed to expressly state his analysis in his decision.  Thus, the Court is unable to find that the ALJ's credibility determination is supported by substantial evidence.

**Plaintiff's Remaining Arguments**

Plaintiff takes issue with the ALJ's RFC analysis, arguing the ALJ failed to explain how each medical condition affects Plaintiff's RFC.  [Doc. 28 at 8.]  Plaintiff contends the ALJ failed to take into consideration the fact that Plaintiff's sixth surgery in 2005 disclosed that the "fascia is basically non-existent," which is evidence that Plaintiff's hernia problem

---

[9]While the ALJ contends the medical evidence within the time frame at issue is sparse [R. 16], he obviously relied on medical evidence outside the time period in finding that Plaintiff's impairment with respect to her hernia problems was severe.  Therefore, it would be disingenuous to allow a lack of evidence from the relatively short time period at issue to form a sufficient basis for discrediting Plaintiff's testimony when the lack of evidence was not sufficient to prevent findings at other steps of the analysis.

preexisted the date last insured.  [*Id.* at 8–11.]  Further, Plaintiff takes issue with the ALJ's

suggestion that Plaintiff was capable of sedentary work between her surgeries in July 2005

and August 2005, which Plaintiff argues is contrary to *Totten v. Califano*, 624 F.2d 10 (4th

Cir. 1980).  [*Id.* at 8–9.]

The Commissioner argues that, other than Plaintiff's subjective statements, which

the ALJ reasonably discounted, Plaintiff has offered no evidence demonstrating that her

hernia surgeries in 2004 and 2005 were representative of her condition during the relevant

time period.  [Doc. 29 at 8.]  The Commissioner also contends the ALJ explicitly considered

Plaintiff's 2004 and 2005 hernia surgeries in assessing her RFC, and as a result, Plaintiff's

argument should be rejected.  [*Id.* at 8–9.]  Lastly, the Commissioner points out that the

ALJ noted the only limitations identified by any medical source were those identified by Dr.

Bynoe, and these limitations are consistent with the ALJ's RFC assessment.  [*Id.* at 9.]

The Administration has provided a definition of residual functional capacity ("RFC")

and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her
> limitations.  RFC is an administrative assessment of the extent
> to which an individual's medically determinable impairment(s),
> including any related symptoms, such as pain, may cause
> physical or mental limitations or restrictions that may affect his
> or her capacity to do work-related physical and mental
> activities.   Ordinarily, RFC is the individual's maximum
> remaining ability to do sustained work activities in an ordinary
> work setting on a regular and continuing basis, and the RFC
> assessment must include a discussion of the individual's
> abilities on that basis.  A "regular and continuing basis" means
> 8 hours a day, for 5 days a week, or an equivalent work
> schedule. . . .

SSR 96-8p, 61 Fed. Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted).  Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments.  It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC. . . .

*Id.* at 34,476.  To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id.* at 34,477. SSR 96–8p specifically states, "[t]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* at 34,478.

Thus, an ALJ's RFC assessment will entail assessing the credibility of any alleged limitations, including assessing the credibility of testimony offered by the claimant. Because the Court has found that remand is necessary in this case to properly evaluate Plaintiff's credibility with respect to the symptoms and limitations rejected by the ALJ, the Court finds the RFC analysis should likewise be reassessed in light of a proper credibility finding.

24

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

December 6, 2012
Greenville, South Carolina